O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

KHALID AHMAD HAMED,

               Petitioner,

      v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

            Respondent.

Case No. SACV 14-1639-KES

MEMORANDUM OPINION
AND ORDER

     Plaintiff Khalid Ahmad Hamed appeals the final decision of the Administrative Law Judge ("ALJ") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons discussed below, the Court concludes that the ALJ provided specific and legitimate reasons for rejecting the findings of Plaintiff's treating doctor. The ALJ's decision is therefore affirmed.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

     In August 2011, Plaintiff filed applications for DIB and SSI, alleging disability beginning in January 2009 because of "cellulitis," "cirrhosis of liver,"

"coagulation of the blood limits operations," "trouble clotting," "low immune system," "filter needed for blood," "need blood platelets," "blood clots," "lower back pain," "carpel tunnel syndrome[e] both hands," "and "was born 5 feet 11 inch but now 5 ft 7in." AR 173-76, 179-84, 219. On March 26, 2013, an ALJ conducted a hearing, at which Plaintiff, who was represented by counsel, appeared and testified, as did a vocational expert and a medical expert. AR 36-62.

On April 17, 1013, the ALJ issued a written decision denying Plaintiff's requests for benefits. AR 13-28. The ALJ found that Plaintiff had the severe impairments of: "hepatitis B resulting in cirrhosis of the liver and splenomeg[a]ly; thrombocytopenia; chronic swelling of his right lower extremity since 1988 without deep vein thrombosis; and a history of spondylosis of the cervical and lumbar spine without significant stenosis." AR 15. She concluded that, notwithstanding his impairments, Plaintiff retained the ability to perform less than the full range of light work:

> [He can] sit eight hours; he can stand and walk two one [sic] to two hours with normal workday breaks typically every two hours; he is precluded from using his left lower extremity to operate foot controls;[1] he cannot climb ladders, ropes or scaffolding; he cannot work at unprotected heights or around dangerous or fast moving machinery; he can occasionally climb stairs, balance, stoop, kneel, crouch, and crawl; he is precluded from using both upper extremities for more than occasional overhead reaching; and he can use both upper extremities for frequent gross and fine

---

[1] Presumably, the ALJ meant to adopt the medical expert's recommendation that Plaintiff be precluded from using his <u>right</u> leg to operate foot controls. <u>See</u> AR 55.

manipulation, other reaching, reaching in all directions, and feeling.

AR 19. Based on the VE's testimony, the ALJ found that Plaintiff could not perform his past relevant work. AR 27. The ALJ consulted the Medical-Vocational Guidelines ("Grids"), determined that jobs existed in significant numbers in the national economy that Plaintiff could perform, and found him not disabled. AR 27.

## II.

## DISCUSSION

The parties dispute whether the ALJ erred in assessing the opinion of treating doctor Samir Azzam. Joint Stipulation ("JS") at 4.

### The ALJ Did Not Err in Assessing Dr. Azzam's Opinion.

### 1.    Relevant Background

In March 2011, Dr. Samir Azzam completed a Hepatitis B Residual Functional Capacity Questionnaire in which he indicated that Plaintiff suffered hepatitis B, cirrhosis of the liver, thrombocytopenia, lymphocytopenia, and splenomegaly and had been referred for a liver transplant. AR 546. Dr. Azzam said that Plaintiff's symptoms included chronic fatigue, enlarged liver, skin rashes, dizzy spells, nausea/vomiting, muscle and joint aches, abdominal pain, difficulty concentrating, weakness, enlarged spleen, jaundice, urinary frequency, confusion, sleep disturbance, bowel incontinence, and anemia. Id. Dr. Azzam did not specify Plaintiff's treatment but said it caused nausea, flu-like pain, and dizziness. Id. Dr. Azzam indicated that Plaintiff also suffered from depression, anxiety, and a personality disorder, all of which affected his physical condition. AR 547.

Dr. Azzam indicated that Plaintiff's symptoms constantly interfered with his ability to maintain attention and concentration and that Plaintiff could not perform even a low-stress job. Id. He could walk less than a city block without

3

severe pain or needing to rest; could sit or stand for 30 minutes at a time; and could sit, stand, or walk for less than two hours in an eight-hour day. <u>Id.</u> Dr. Azzam opined that Plaintiff could work zero hours a day; would need more than 10 breaks in a normal workday because of pain, fatigue, nausea, and medication side effects; and would need to rest for more than two hours before returning to work. AR 548. Plaintiff would need to elevate his legs above heart level 95% of the time while sitting. <u>Id.</u> He could never lift even less than 10 pounds and could never twist, stoop, crouch, climb ladders, or climb stairs. <u>Id.</u> He could reach overhead and perform fine and gross manipulations only two to three percent of the time. AR 549. He would miss more than four days of work a month. <u>Id.</u> Plaintiff could not concentrate on tasks; needed to avoid noise, dust, fumes, gases, and hazards; and would suffer anxiety from human interaction. <u>Id.</u>

Dr. Azzam said Plaintiff's symptoms had begun in 2011. <u>Id.</u>

### 2.     Applicable Law

Three types of physicians may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did neither. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion is generally entitled to more weight than that of an examining physician, and an examining physician's opinion is generally entitled to more weight than that of a nonexamining physician. <u>Id.</u> When a treating or examining physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. <u>See</u> <u>Carmickle v. Comm'r, Soc. Sec. Admin.</u>, 533 F.3d 1155, 1164 (9th Cir. 2008); <u>Lester</u>, 81 F.3d at 830. When it is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it. <u>Id.</u> An ALJ need not accept the opinion of any physician, however, if it is brief, conclusory, and inadequately supported by clinical findings. <u>Thomas v.</u>

4

Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). The weight given a physician's opinion, moreover, depends on whether it is consistent with the record and accompanied by adequate explanation, the nature and extent of the treatment relationship, and the doctor's specialty, among other things. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6).

### 3.   Analysis

The ALJ gave Dr. Azzam's opinion "little weight." AR 26.

The ALJ found that despite his treating relationship with Plaintiff, Dr. Azzam's opinion was not supported by the evidence of record. AR 26. For instance, although Plaintiff's treatment notes reflect consistent findings of swelling and redness in his right lower extremity, they do not reflect findings as severe as Dr. Azzam's. AR 22. Although Plaintiff's doctors discovered a deep venous thrombus in his right popliteal vein, it was nonobstructive, and his doctors continued to monitor it without intervention. AR 23; see AR 598, 609, 1282, 1325. In July 2011, Plaintiff was admitted for hospital treatment of lower-leg cellulitis but was discharged with decreased swelling and in stable condition. AR 22; see AR 571. In September and November 2012, he was again admitted for antibiotic treatment of lower-leg cellulitis and discharged in stable condition. AR 1147-48, 1176, 1213-14; see AR 1256 (noting no evidence of deep-vein thrombosis). In January 2013, Plaintiff sought emergency treatment of right-leg swelling and was admitted for antibiotic treatment, but an ultrasound showed no evidence of deep-vein thrombosis. AR 22; see AR 1305-066, 1309.

The ALJ noted complications of Plaintiff's Hepatitis B infection, including cirrhosis, thrombocytopenia, and marked splenomegaly. AR 23. She found, however, that his level of care remained routine and his presentation unremarkable. AR 26; see, e.g., AR 1282 (in Dec. 2012, Dr. Veena Charu noting that leukopenia was stable and thrombocytopenia would be treated only

1   if Plaintiff developed bleeding or low platelet count); AR 1325 (in Mar. 2013,

2   treatment note indicating that Plaintiff was seeing gastroenterologist regarding

3   Hepatitis B and would begin medication to manage virus). Treatment notes

4   indicated that Plaintiff may ultimately be a candidate for liver transplant, but

5   he had not been evaluated for a transplant, and the ALJ noted that Plaintiff's

6   treatment records reflected no ascites, weight loss, jaundice, or appetite

7   disturbances. AR 26; see id. (ALJ noting Mar. 2013 letter indicating that

8   Plaintiff may be candidate for liver transplant had not been evaluated because

9   of insurance-coverage issues (citing AR 1322)); see also AR 609, 713 (in Aug.

10  2011 and Jan. 2012, doctors recommending gastroenterology consult to

11  determine whether Plaintiff would be candidate for liver transplant in future).

12       Nor did Plaintiff's treatment notes provide any other basis for the

13  disabling symptoms indicated by Dr. Azzam. Although imaging showed

14  degenerative changes in Plaintiff's spine, the ALJ noted that repeat imaging

15  studies of his cervical and lumbar spine showed no significant stenosis. AR 26;

16  see AR 929 (Sept. 2011 lumbar x-ray showing degenerative changes but no

17  spondylolisthesis); AR 720 (Nov. 2011 x-ray showing normal alignment and

18  "minimal degenerative disease" of the cervical spine); AR 927-28 (Oct. 2012

19  cervical MRI showing mild to moderate neural-foramen encroachment  and

20  borderline stenosis at C6-7); 1287 (in Jan. 2013, spine surgeon Tien Nguyen

21  noting MRI evidence of degenerative disc disease of cervical and lumbar spine

22  but only mild stenosis and no evidence of significant nerve compression and

23  referring Plaintiff to pain specialist). Plaintiff complained of tingling and

24  weakness in his hands and radiating lower-extremity pain, but examinations

25  revealed only mild lumbar tenderness and showed full muscle strength and

26  intact sensation in his upper and lower extremities. AR 22-23; see AR 792 (in

27  Nov. 2011, pain specialist Dr. Chiwai Chan noting 5/5 strength in all major

28  muscle groups and no neural deficits in lower extremities); AR 1287 (in Jan.

2012, Dr. Nguyen noting mild tenderness and no gross abnormality upon examination and MRI evidence of only mild canal stenosis and no nerve compression in cervical spine); AR 1320 (in Dec. 2012, neurologist Reda Gamal noting normal strength and sensation in upper and lower extremities). A nerve-conduction study of Plaintiff's upper extremities was unremarkable, and although his lower-leg edema limited the nerve-conduction study of his lower extremities, the report showed neither lumbar radiculopathy nor entrapment radiculopathy of the left leg. AR 23; see AR 1292. Moreover, the ALJ noted that Plaintiff's level of care continued to be routine, and he had declined more aggressive pain management for his lumbar complaints. AR 26; see AR 1323; cf. Johnson v. Shalala, 60 F.3d 1428, 1432-33 (9th Cir. 1995) (finding that ALJ properly discounted treating physician's finding of disability when medical records revealed routine, conservative care). The ALJ thus found that Plaintiff's cervical and lumbar complaints merited exertional, postural, manipulative, and environmental limitations but none as severe as the limitations in Dr. Azzam's questionnaire. AR 24; see AR 19.

That Dr. Azzam's finding of severe limitations was unsupported by the evidence of record, including Dr. Azzam's own treatment notes, was a specific and legitimate reason to give his opinion little weight. See Thomas, 278 F.3d at 957; Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); Houghton v. Comm'r Soc. Sec. Admin., 493 F. App'x 843, 845 (9th Cir. 2012) (holding that ALJ properly discounted medical opinions that were "internally inconsistent, unsupported by [the doctor's] own treatment records or clinical findings, [and] inconsistent with the record as a whole").

The ALJ further observed that Dr. Azzam's opinion appeared to be based upon Plaintiff's subjective complaints rather than objective findings. AR 26. The ALJ discredited Plaintiff's subjective symptom testimony to the extent it was inconsistent with his daily activities, which included driving, using

7

public transit, shopping with assistance, managing his finances, reading, watching television, and socializing. AR 21; see AR 246-47, 268-69. The ALJ also found that Plaintiff's complaints were inconsistent with the medical evidence, which showed routine care, little change in his conditions, and successful resolution of urgent symptoms. AR 21-22. Plaintiff does not challenge the ALJ's credibility assessment. That Dr. Azzam's opinion appeared to reflect Plaintiff's properly discredited subjective complaints was a specific and legitimate reason to discount the opinion. See Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989) (finding ALJ properly disregarded physician's opinion when it was premised on claimant's subjective complaints, which ALJ had already discounted); Houghton, 493 F. App'x at 845 (holding that ALJ properly discounted medical opinions that were premised primarily on claimant's subjective statements, which ALJ found unreliable).

In response to the ALJ's finding that Dr. Azzam's opinion was unsupported by the evidence in the record, Plaintiff contends that Dr. Azzam "supported his opinion with his own observations." JS at 8. Dr. Azzam checked boxes and filled in blanks on a form, indicating Plaintiff's symptoms and opining as to his limitations, but provided no support for his findings of very severe limitation. See Thomas, 278 F.3d at 957 (noting that ALJ need not accept medical opinion that is "brief, conclusory, and inadequately supported by clinical findings"); see also Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (noting preference for individualized medical opinions over check-off reports).

Plaintiff further contends that the ALJ substituted her lay opinion for that of the medical professionals. JS at 9. She in fact formulated an RFC consistent with the opinion of medical expert Irvine Belzer and slightly more limiting than that of state-agency physician D. Chan, whose opinions she gave "great weight." AR 24-24; compare AR 19 with AR 54-46, 68-69; see also AR

26 (ALJ noting that Plaintiff's spinal impairments merited greater limitations than those found by Dr. Chan). Because the ALJ found that the opinions of Drs. Belzer and Chan were better supported by the evidence and more consistent with the record as a whole than that of Dr. Azzam, she properly discounted his opinion in favor of theirs. See Houghton, 493 F. App'x at 845 (holding that ALJ properly discounted two medical opinions in favor of others which ALJ found better supported by evidence and more consistent with record); accord Tonapetyan, 242 F.3d at 1149. Any conflict in the properly supported medical-opinion evidence was the sole province of the ALJ to resolve. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

Plaintiff contends that the ALJ erred in crediting the opinion of medical expert Irvine Belzer over that of Dr. Azzam. JS at 7. As the ALJ noted, however, Dr. Belzer was able to review all of the evidence of record and hear Plaintiff's testimony and provided a detailed analysis of medical evidence. AR 25; see AR 51-56. The ALJ found that Dr. Belzer's opinion was consistent with the evidence of record, which confirmed diagnosis of and treatment for the alleged impairments but also showed that Plaintiff continued to engage in many activities. AR 25; see AR 20 -21 (ALJ noting that Plaintiff left the house three to five times a week, walked short distances, shopped, drove, used public transit, watched TV, read, socialized with friends, and, with assistance, shopped for groceries, went to the post office, prepared meals, and performed household chores). That Dr. Belzer had access to Plaintiff's testimony and medical records; provided an explanation for his findings and RFC assessment; and assessed an RFC that the ALJ found to be consistent with evidence of Plaintiff's conservative treatment, unremarkable presentation, and largely stable impairments were all valid bases upon which to afford Dr. Belzer's opinion great weight. See 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6) (extent to which doctor is "familiar with the other information in [claimant's] case

record" is relevant factor in determining weight given to opinion); <u>Andrews</u>, 53 F.3d at 1042 (greater weight may be given to nonexamining doctors who are subject to cross-examination); 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (more weight generally given to opinions that are "more consistent . . . with the record as a whole"); <u>Thomas</u>, 278 F.3d at 957 (opinion of nonexamining physician may serve as substantial evidence consistent with other evidence in record); <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 600 (9th Cir. 1999) (same).

Plaintiff indisputably suffers from significant impairments, but the evidence does not establish that these impairments prevent him from working. Remand is not warranted.

## V.

## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated:  <u>December 09, 2015</u>

_____
KAREN E. SCOTT
United States Magistrate Judge

10